The opinion of the court was delivered by
Duncan, J.
This is an inquiry on a will where the intention of the testator is obscured by an overstretched anxiety to be plain, and. the use of a redundancy of words to express that of which the testator in his own mind had formed a distinct and clear idea. In forming a judgment of this intention, the understanding is not tied to the technical sense" of any form of words. No other'man’s will can guide us in the construction of this man’s will; for no other man’s will is'worded as this is. Every case of the kind is governed by its own circumstances, and is individual; and we are sensible of the kindness of counsel in relieving us from the .fatigue of hearing numerous cases on the ill-expressed wills of other men.
The will and codicil have been properly considered as but one *46 testamentary disposition. The declaration of the testator, as.to the way in which he wished his property to go on his death, and the aid of a former will have been enlisted by both parties, to assist in their opposite constructions. 1 know of. but one rule, and that is the dictate of common sense, to take an expansive view of every part of the will, the testator’s estate, and his family, and from that endeavour to come at his general plan; for almost every testator has formed to his own conception some general plan, and, however ambiguous his verbiage may-be, and however inconsistent, particular expressions may be, (which ought not to be caught at to defeat his general intention,) by transposing clauses in the will, giving full effects to his hints, circumstances will break out to ascertain the leading intention, and render that plan clear on meditation, which on a first and even a second perusal might appear doubtful. S.uch was the state of my mind when I first read this will and codicil; but, on a more mature examination, considering it. provision by provision, step by step, and word by word, all doubt has vanished, and the scope of the testator’s view, both as to the first disposition and the last destination of his estate, both real and personal, appears to my vision as clear as that of any other will I have had occasion to consider. A will is never to be construed by adverting to a single clause. Every thing bearing on that subject must be taken together; every word is to have effect, and have a meaning imputed to it, if capable of it, without violating the general intent; and if any general intent can be collected, pr any one particular object, expressions militating with that may be rejected.
The testator was possessed of a considerable real, but much larger personal estate; he had a wife about thirty-two, an only child, a son, of about twelve, when he made this will and codicil. Seven years before that, when he made his first will, these were the only objects of his bounty; he did not then contemplate provision for any other human being. That will was drawn by a gentleman who has expressed the intention of the testator, in a manner not to be misunderstood. By that will his wife had first a specific bequest of plate, household furniture, and other enumerated articles of considerable value, without any inventory or account to be taken of the items of his personal estate, to her absolutely and for ever. Moreover, he devised to her the one-third part of the nett rents, issues, and income, of all his real estate during all the time of her natural life: the rest, residue, and remainder of his estate, real and personal, he bequeathed to his son, James V. Mazurie, to hold to him, his heirs, executors, administrators, and assigns for ever. He made his executors testamentary guardians of his son, and appointed his wife, Roberjot, the plaintiff, and Joseph Do-nath, his executors. On the 25th oí.February, 1S22, he revoked this will, and drew up another in his own handwriting. It is evident that he had before him the revoked will, for he copies, in some provisions, its very words; and indeed there is little - differ *47 ence between these instruments, except that he devises to his wife two-thirds instead of one, and instead of giving his wife the per-sonai estate absolutely and for ever, he adds the word real. But there is added to these devises this most significant clause, and at the death of his mother to become, or he becomes, sole heir of all I have bequeathed to his mother. A few daj-s afterwards, on the 9th of March, he adds the codicil with his own' hand; and then, for thé first time, an intent appears to preserve and continue his property in his own family; for although he sets out with the declaration of an intention to alter his will with regard to his son only, and for his advantage, yet, as to the son, on any construction, it is not very beneficial, but if the mother’s construction prevails, it is as to him, far from being a very natural and kind disposition. He is to be a minor until,thirty, dependent on his mother’s bounty; and instead of an absolute estate, in one-third of both real and personal estate, with a remainder on his mother’s death of'the whole estate, he has only a life estate in one-third of both real and personal, and a remainder in the two-thirds of the real. But the testator did not so intend, for there is an entire new modification of his'estate. He looked beyond this — the death of his wife, and the death of his son without children, and provides another succession, on the happening of these events, both'as to the real and personal estate. On the mother’s death, the two-thirds bequeathed to her are to go over to James, for the benefit, of his children; and on James’s death without children, in his.mother’s lifetime, to go over to her for her life; and on James’s death without children, and on the mother’s death, the whole of his estate, both real and personal, is to go over to his real heirs. These are. more than translations; they are the plain words of the testator, written with his own hand. Throughout this whole codicil there is a constant endeavour on his part to be understood that his wife and his son were to have life estates, both in the real and personal property, and that on the death of the son without children, the mother was to take the whole, and on the death of the mother, the son, for the benefit of his children; and that when the mother' is dead, and the son is dead without children, then the whole is to go over, the real estate in bulk, and the capital of the personal without diminution, •to.the real heirs of the testator. I care not whether he gave to any. words either their appropriate legal meaning, or did not use them in that sense, when the inquiry is after intention and not on the effect of words of legal limitation. Heye there was a singleness in the intent; provision for his wife during life, ample and liberal; for his son during life, and, if he left any children, they were to enjoy the whole, but if he died without children, then to his real heirs; for real heirs may be applied either to his heirs at law, or to his personal representatives, with respect to the different kinds of estate. What interest the son takes — what interest his children take — who are the'real heirs intended by the testator to' *48 take on the death of his son without -children, are not subjects of inquiry at present. The inquiry is, what interest does the wife hold? The counsel of the defendant, while they contend for her absolute interest’ in the personal estate, consider that she only holds a life estate in the real. The construction which gives consistency to every part of the will,- and effectuates both the general and particular intent, ought to prevail. The construetion which separates the real from the personal estate, giving an estate for life in the one.and demanding the absolute property in the other, would ■ effectually defeat the manifest intention of the testator, — that, on the happening of particular: events, the whole should go over to his real heirs. On the death of his mother, two-thirds will be transferred to him for the benefit of his children. He is only to enjoy with his children the interest or income of the said estate during his life, and. not to dispose of the capital. “ I mean,” says the testator, “of any part of my real and personal estate, as it is to go to my real heirs after my wife’s death, and his death, if he have no children.” In every line -of this codicil, where he speaks of his estate, it is of his real and personal estate linked together, and when he speaks of his devisees, it is as devi-sees for life, and on the death of either, he makes a similar provision for the other, arid on both their deaths, (his son’s dying without children,) all to go over to his own family. If the son took but an estate for life in the. personal estate, the wife took but the same interest: the .quantity of interest each took was the same, the proportions differing. The testator, providing for the valuation of his property, all his property, (except the specific legacy,) calls it á valuation of all he had' given his wife for life. She is to have the privilege, of holding at the valuation prices, whatever she thinks proper for her two-thirds, and the remaining third is to be transferred to his son. If it be so, as the defendant contends, then by choosing the real éstate, she becomes the owner of that, in fee simple, as part of two-thirds at the valuation; for there is not to be a different valuation of the real and,personal property; the one the valuation of a life interest, the other the absolute property. This would be an absurdity that could not be imputed to any man capable of devising. If this proves an absolute ownership in the personal, it proves an absolute fee in the real, which is not pretended. Further, he gives his executors, or the survivor of them, of whom his wife is one, power to sell the whole real estate, and the money arising from the sale, as well as the money in bank, and money to be received from his outstanding debts, to invest in some other stocks or real estate. How is this, when converted, to go? Is it to preserve its pristine quality, and to go as if it never had been changed ? There is no provision for this, and this because the testator never supposed the devisees held an equal interest in the different species of property. I am firmly persuaded, that when the testator made so great a change as giving the widow *49 two-thirds instead of one, when he transcribed the devise to his wife and son from the first will, he was struck, paused, and reflected, — “ This is taking too much from my only child, our beloved son James,” as he calls him, and having lifted up the pen with this reflection, he put it again on the paper, to declare, that “at the death of his mother he becomes sole heir of all I have bequeathed her.” This was a paramount intention, and, standing alone- in the will, would perhaps of itself cut down all to a life estate. It is a declaration to this import: “Whatever terms are used in devising my estate, it is my intention that on the death of my wife, my son shall be sole heir of all I have bequeathed her.” All I have bequeathed to her, takes in both real and personal estate,, and sole heir would not restrain it; for making him heir of all, is making him devisee of all: it is the strongest term an unlearned man could use. I make my son my sole heir, of all I have, would amount to a bequest both of real and personal estate. But when this will is taken as the fundamental testamentary act, the codicil, as the testator expresses it, but a supplementary , act, and the testator setting out with a declaration that the alteration was not intended to injure his son, and certainly not made with any intention of repealing the first act, it is to-be taken in connection with it, a modification, a continuation of the succession óf his property; and When it again and again speaks of a life estate, and a further disposition on the termination of these lives, it is not doing justice to this will to say it is obscure, when viewing it as a whole and entire plan, it leaves the mind free from all doubt. It affords a strong light, sufficient for the court to discerp the clear intention in the testator to give life estates to his son and wife in succession,— remainder, on the death of his son without children, to his real heirs.
If this construction was more doubtful than it appears to me to be, and my mind was in equilibrio, I think the reasonableness, of the one construction should prevail. If there had been a precise' meaning ascertained to give the wife the personal property absolutely, no reasoning from supposed cases should induce the court to put a different construction on the will; but, in endeavouring to ascertain the meaning of a testator, the absurdities, improbabilities, and inconsistencies, which may arise out of cases falling within one construction and another, have constantly been attended to. It is almost inconsistent with humanity to suppose that a father should forbid his only son, that son an infant who had never offended him, the enjoyment and disposition of the capital of all the personal estate, even the one-third he had given him, for the sake of remote relations, and should leave to his widow the absolute power and dominion over two-thirds of it. His wife, his son, and his son’s children were intended to take his whole estate; and* on his son’s death without children, all was to go over to remote branches of his family. He continues his property, as far as the law will permit per *50 petuity, in his family. It is not to go to strangers, — a wish natural to almost the whole of the human race. As to the expressions of the devise of the real and personal estate, to be absolutely and for ever, though this, standing alone, would give the defendant an entire property in both estates, yet it is admitted that the testator has manifested a different intention as to the real estate. There are no .words too strong for intention, whether it appears by subsequent express explanations or manifest implication. The implication must be plain to abridge an express estate: it must be such a conclusion as satisfies the mind of the judge of the intention; but necessary implication does not mean natural necessity, but so strong a probability, that no intention to the contrary ought to be presumed. Circumstances are sufficient to qualify and restrain general expressions, which are controlled to make the will consistent; and if two parts of the will are irreconeileable, the latter must give way to the'former. Indeed, there are no words of so stubborn and inflexible a nature, as will not bend to the intention of the testator when it can be collected from the whole context. So far has reason prevailed over a rigid adherence to the legal, and even common meaning of words, that real estate has been decided to pass under the denomination of personal. So the word legacy has included lands, (Hope v. Taylor, 1 Burr. 268;) an express estate for life, and no longer, construed an estate tail, by necessary implication, to effectuate the general intention of the testator. Robinson v. Robinson, 1 Burr. 38. My personal estate, absolutely and for ever, does not more fully convey the whole property in personal estate, than a devise for life, and no longer, conveys but an estate for life. Yet the one may be explained to intend only an estate for life, as the other may be intended to give a longer estate than for life, though in the strong language of, for life and no longer.
For these reasons, I am clearly of opinion that sufficient appears on the face of this will, to show that the testator only intended his wife should have but an estate for life in both his real and personal estate, except in the specific bequest, which she is entitled to absolutely, and the court direct judgment so to be entered on the case stated.
Judgment for the plaintiff.